NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL EVRON, | Civ. No. 17-1629 (RBK) (KMW) |
| Plaintiff, | |
| v. | **OPINION** |
| DAVID ORTIZ, et al., | |
| Defendants. | |

**ROBERT B. KUGLER, U.S.D.J.**

I. **INTRODUCTION**

Plaintiff Michael Evron seeks to bring a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against David Ortiz, the Warden of FCI Fort Dix, and John Doe, Director of the Federal Bureau of Prisons. (ECF No. 1). Plaintiff has also filed a motion for the appointment of *pro bono* counsel. At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, the complaint is dismissed in part and proceeded in part. In addition, Plaintiff's request for the appointment of *pro bono* counsel is denied.

II. **BACKGROUND**

Plaintiff brings this civil rights action against Warden David Ortiz and the unnamed Director of the Federal Bureau of Prisons ("BOP") in their official capacities.[1] The following factual allegations are taken from the complaint and are accepted as true for purposes of this screening.

Plaintiff is a convicted and sentenced federal prisoner confined at Fort Dix. (ECF No. 1 at 2). He explains that Fort Dix has an ongoing policy of collective punishment, wherein a single inmate commits an infraction, and hundreds of uninvolved inmates are punished. (*Id.* at 5–7). He raises several instances in which he was subjected to collective punishment. In September 2015, he explains that a single inmate whistled at a female staff member—as a result, over two thousand prisoners were denied commissary for five weeks. (*Id.* at 6). In December of 2015, he explains that an inmate was caught with a cell phone and then assaulted the housing officer who found the phone. (*Id.*). Thereafter, Plaintiff's unit, consisting of nearly 400 men, were denied commissary, access to recreational facilities, religious services, and education, for an extended period of time. (*Id.*). He also states that he was prohibited from attending his job as a tutor. (*Id.*). He explains that religious services and continuing education classes are routinely denied to inmates because of the collective punishment policy. (*Id.* at 7.). Plaintiff alleges that this policy denies him and other inmates their constitutional right to due process, because he was punished without any accusation of wrongdoing. (*Id.* at 7–8). Plaintiff seeks only injunctive relief, to prohibit the BOP from punishing inmates without evidence of wrongdoing. (*Id.* at 6).

---

[1] A quick search by this Court reveals that the Acting Director of the BOP is Hugh J. Hurwitz. The Clerk will be ordered to insert his name into the caption.

### III. LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts are required to review civil actions in which a prisoner proceeds *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). When reviewing such actions, the PLRA instructs courts to dismiss cases that are at any time frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Because Plaintiff is proceeding *in forma pauperis*, the applicable provisions of the PLRA apply to the screening of his complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff seeking injunctive relief, however, need not prove personal involvement by each defendant. *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016). Furthermore, while *pro se* pleadings are liberally construed, they "still must allege sufficient facts

3

in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

IV. **ANALYSIS**

A. **Sovereign Immunity**

Plaintiff has sued both defendants in their official capacities. However, federal officials sued in their official capacities are immune from suit under the doctrine of sovereign immunity. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.") (citing *FDIC v. Meyer*, 510 U.S. 471, 483 (1994)); *see also Webb v. Desan*, 250 F. App'x 468, 470 (3d Cir. 2007) (affirming the dismissal of a *Bivens* claim against the United States, BOP, and seven named individuals in their official capacities). Because defendants are both agents of federal entities, a *Bivens* action cannot be maintained against them in their official capacities, and thus the complaint is barred by sovereign immunity. Nevertheless, construing the complaint liberally, the Court will assume Plaintiff intended to sue the defendants both in their official and individual capacities.

B. **Loss of Prison Rights**

While Plaintiff presents a compelling argument, the Court must assess if the rights denied him are, in fact, constitutionally protected rights, or merely privileges that the BOP may deny him.

1. Commissary

Plaintiff states that he has been routinely denied access to the commissary, as a result of the BOP's policy of collective punishment. This argument fails to state a claim, because inmates

do not have a constitutionally protected right in accessing the commissary: "[t]he loss of canteen or commissary purchasing privileges does not violate the Constitution." *Planker v. Christie*, No. 13-4464, 2015 WL 268847, at *22 (D.N.J. Jan. 21, 2015) (citing *Pelzer v. Shea*, 470 F. App'x 62 (3d Cir. 2012); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 n.4 (D.N.J. Feb. 27, 2014) ("claims based on loss of privileges are not cognizable even in *Bivens* review.") (citing *Pelzer*, 470 F. App'x 62); *Troy v. Kuhlmann*, 1999 WL 825622, * 12 (S.D.N.Y. 1999) ("denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate").

While an inmate, under the Eighth Amendment, does have a constitutional right to be provided basic necessities, *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994), Plaintiff has not alleged that his loss of commissary privileges has denied him basic necessities. Accordingly, this claim is dismissed without prejudice.

    2. <u>Access to Recreational Facilities</u>

Plaintiff next contends that the BOP's collective punishment scheme has denied him and other inmates access to recreational facilities. (ECF No. 1 at 6). "[T]he denial of exercise and recreation may result in a constitutional violation ". *Millhouse v. Arbasak*, 373 F. App'x 135, 138 (3d Cir. 2010); *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) ("[t]here is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'") (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). Nevertheless, the Third Circuit has never determined, in a precedential opinion, when the denial of recreational activities amounts to a constitutional deprivation. Instead, the Third Circuit has explained that other Courts of Appeals "consider the totality of the circumstances . . . [such as]

5

the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (citations omitted). Thus, in determining if an inmate's rights have been violated by the denial of recreation, courts assess the length of the recreational deprivation and the extent of physical harm to the inmate. *See id.* at 677 (3d Cir. 2017) ("the temporary denial of out of cell exercise for twenty-eight days was not a substantial deprivation" of the inmate's Eighth Amendment rights.); *Millhouse v. Arbasak*, 373 F. App'x 135, 138 (3d Cir. 2010) (denial of recreation for one day "is insufficiently serious to implicate the Eighth Amendment") (citation omitted); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) (denial of yard privileges for no more than ninety days not cruel and unusual punishment); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding deprivation "[w]here movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened".)

Here, while Plaintiff has not alleged facts establishing that the recreational deprivation has caused him tangible physical harm, he has indicated that the deprivation lasted six weeks. Because the law is unsettled in this area, the Court will permit this claim to proceed.[2]

---

[2] The Court is mindful of the recent Supreme Court decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), counseling against the creation of new *Bivens* actions. The Court notes, however, that Plaintiff is seeking only injunctive relief as opposed to money damages. The Supreme Court in *Ziglar* appears to have been more concerned with the former: "the question with respect to the *Bivens* claims is whether to allow an action for *money damages* in the absence of congressional authorization." *Id.* at 869 (emphasis added). The Court reserves the right to address the applicability of *Ziglar* at a later stage, should the need arise.

3. **Religious Services**

Plaintiff states that the policy of collective punishment has, on occasion, deprived him of the right to attend religious services. The Court construes Plaintiff's complaint as raising a First Amendment right to free exercise claim.

Under the First Amendment, "[t]he Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate 'a reasonable opportunity of pursuing his faith.'" *McCray v. Passaic Cty. Jail*, No. 13-6975, 2013 WL 6199202, at *2 (D.N.J. Nov. 27, 2013) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 322 n.2 (1972)). In order to establish a claim, Plaintiff must raise sufficient allegations to show that the defendants' actions impinged on his constitutional rights and were not reasonably related to legitimate penological interests. *Williams v. Morton*, 343 F.3d 212, 216 (3d Cir. 2003). To make that determination, the Third Circuit relies on the four-factor test established by the Supreme Court in *Turner v. Safley*: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of ready alternatives. 482 U.S. 78, 89-90 (1983).

Here, Plaintiff alleges that as a result of actions taken by other inmates, he is deprived of the right to attend religious services. While Plaintiff provides scant facts to support his argument, the Court finds the allegations sufficient to allow this claim to proceed at this time.[3]

---

[3]  Once again, the Court will not address the applicability of *Ziglar* at this time.

4. **Educational Classes and Tutoring**

Plaintiff argues that he has been deprived of the right to attend educational classes, as the result of infractions committed by other inmates. (ECF No. 1 at 6). He also states that he has not been allowed to attend his job as a tutor. (*Id.*) Prisoners, however, have no constitutional right to an education or prison job. *See Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) )("Prisoners have no constitutional right to rehabilitation, education, or jobs") (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001) (same); *Knight v. State of Ariz.*, 39 F.3d 1187 (9th Cir. 1994) ("Inmates have no constitutional right to education or rehabilitation."); *Mason v. Educ. Dep't*, 2008 U.S. Dist. LEXIS 42183 (D. Del. May 28, 2008) ("[Plaintiff] contends he is being denied education and schooling. Unfortunately for [Plaintiff], prisoners have no constitutional right to an education.")

Because there is no constitutionally protected right to an education or a job in prison, this allegation fails to state a claim upon which relief may be granted. Accordingly, this claim will be dismissed without prejudice.

**C. Motion for Appointment of Counsel**

Plaintiff has also requested the appointment of *pro bono* counsel. (*See* ECF No. 1-1 at 3). A district court may appoint counsel to represent an indigent civil litigant under 28 U.S.C. § 1915(d), though such litigants do not have a right to appointed counsel. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). In evaluating a motion seeking appointment of counsel, the court must preliminarily determine whether the plaintiff's claim has arguable merit. *Id.* at 155. If the court finds that the plaintiff's claim has merit, the court should be guided by the following non-exclusive factors:

    1) The plaintiff's ability to present his or her own case;

> 2) The complexity of the legal issues;
>
> 3) The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>
> 4) The amount a case is likely to turn on credibility determinations;
>
> 5) Whether the case will require the testimony of expert witnesses; and
>
> 6) Whether the plaintiff can attain and afford counsel on his own behalf.

*See id.* at 155–57; *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). To the extent Plaintiff's claim may be meritorious, Plaintiff has not demonstrated at this stage of the proceeding that *pro bono* counsel is warranted under the *Tabron* factors. Thus far, there is nothing to indicate that Plaintiff is unable to present his own case. He has properly filed an application for *in forma pauperis* status, and the instant *pro bono* motion. As well, his complaint cites relevant constitutional concepts. Furthermore, the legal issues presented in the complaint are not overly complex, and, at this early stage, it is not clear if expert testimony will be required, whether factual investigation will be necessary, or the degree to which the case may turn on credibility determinations.

The Court acknowledges that Plaintiff is of limited financial means and is unable to afford his own counsel. Nevertheless, this fact alone is not enough to justify the appointment of counsel. Plaintiff is permitted to renew his request to appoint *pro bono* counsel at a later time. In the event he does so, the Court instructs Plaintiff to address the *Tabron* factors set forth above

V. **CONCLUSION**

For the reasons set forth above, the Court will dismiss without prejudice Plaintiff's § 1983 claims as they relate to the loss of commissary, jobs, and educational classes for failure to state a claim upon which relief may be granted. Plaintiff's § 1983 claims related to the denial of

9

recreational facilities, and attendance at religious services may proceed.  In addition, Plaintiff's motion for the appointment of *pro bono* counsel is denied without prejudice.  An appropriate order follows.


Dated:  August 23, 2018                                             s/Robert B. Kugler
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge